# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY HAGGY,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | CIVIL ACTION NO.:<br><br>**COMPLAINT**<br><br><br>MARCH 14, 2016 |

## COMPLAINT FOR BENEFITS UNDER
## AN EMPLOYEE WELFARE BENEFIT PLAN

Plaintiff Gary Haggy ("Plaintiff" or "Mr. Haggy") brings this action against Defendant UNUM Life Insurance Company of America ("Defendant" or "UNUM") under 29 U.S.C. § 1132 and alleges as follows:

### NATURE OF THE ACTION

1.  This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2.  The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.  Those avenues

of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that the Boehringer Ingelheim Corporation Disability Plan ("Plan") is a disability plan established and maintained by Boehringer Ingelheim Corporation, a Connecticut corporation, which serves as the Plan Administrator, to provide its employees, including Plaintiff, and employees of its subsidiaries and affiliates with income protection and continued life insurance coverage in the event of a disability.

4. Plaintiff alleges upon information and belief that Defendant, is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Maine, authorized to transact and transacting the business of insurance in this state since May 14, 1971, and is the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant UNUM, who fully insured the Plan under policy number 532944 001 ("Policy," attached hereto as Exhibit A) and who is ultimately liable if Plaintiff is found entitled to benefits under the Plan, designated Connecticut as the "Governing Jurisdiction" in the Policy.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of Boehringer Ingelheim Corporation, its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times he was covered under the Policy, which was issued by UNUM to Boehringer Ingelheim Corporation to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. The Plan provides a monthly benefit equivalent to sixty percent (60%) of Plaintiff's Monthly Earnings, defined in the Plan as pre-tax gross monthly income from Boehringer

Ingelheim Corporation, less Deductible Sources of Income, following a 180-day Elimination Period and continuing through age 65.  In addition, the Plan provides continued life insurance coverage while disabled, equal to $200,000 for the Plaintiff.

9. The Plan defines disability in relevant part as follows: "You are disabled when Unum determines that: you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.  After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
**(Enforcement of Plan Terms for Wrongfully Denied Benefits)**

10. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

11. Prior to his disability, Plaintiff was working as the Section Head of Quality Control at Roxane Laboratories.  Plaintiff became disabled as defined by the Plan on or about March 12, 2002, due to end-stage liver disease for which he ultimately underwent a liver transplant.  Post-operative medical records documented "prolonged post-op recovery due to debilitation and sepsis and rejection."

12. In January 2003, his surgeon, Dr. Charles G. Winans, reported to Unum the extent of his disability following the liver transplant: "This is a 42-year-old white male with history and exam suggestive of the following: 1. Muscle Contraction Headaches; 2. Seizure Disorder; 3. Basal Ganglia infarcts and cerebellar degeneration versus infarcts secondary to end-stage liver disease status post liver transplantation in September 2002 on Aspirin 81 mg PO Q day; 4. Peripheral

Polyneuropathy secondary to liver disease; 5. Right peroneal nerve palsy with right foot drop secondary to underlying neuropathy." As a consequence of his seizures, brain infarcts, and other conditions related to his liver disease, Plaintiff also suffered cognitive impairment, with difficulty concentrating and memory loss documented by his treating physicians.

13. Plaintiff remains totally disabled through the present due to progressive neuropathy which was documented by his treating neurologist, Dr. Christopher Russell, as early as June 2006, at which time Dr. Russell certified to UNUM the Plaintiff's "permanent disability." In addition to progressive neuropathy, Plaintiff is disabled due to bilateral cubital tunnel syndrome, confirmed by EMG testing, as well as left C5-6 radiculopathy and left L4-5 radiculopathy, both confirmed by MRI exams of the spine, which cause pain, restriction and limitation in all of his extremities. These conditions impair his ability to perform most occupations requiring writing, keyboarding, and other use of his hands, including laboratory work.

14. Plaintiff timely submitted a claim to UNUM for payment of disability benefits. UNUM accepted his claim and began payment of disability benefits pursuant to the Plan on or about September 15, 2002. For the next twelve years, UNUM continued to find Plaintiff totally disabled from his regular occupation and any gainful occupation for which he is reasonably fitted by education, training or experience.

15. The Social Security Administration also found Plaintiff totally disabled from any gainful occupation under its rules since March 2002. Plaintiff continues to receive Social Security disability benefits through the present.

16. Plaintiff was advised to engage in intellectually challenging activities in order to avoid or delay further cognitive decline. As such, he enrolled in post-secondary classes whenever able, which he was able to complete thanks to accommodations provided in light of his

disabilities.  Despite this additional education, UNUM's vocational consultant opined that Plaintiff still remains disabled as defined by the Plan.  The claim file note dated May 1, 2012 states, "Based on recent Voc Skills Assessment that EE will not have any alt[ernative] gainful occ[upation]s even with Masters degree."

17.     On or about October 28, 2014, however, UNUM denied Plaintiff's long-term disability claim due to his alleged capacity to perform his own occupation as a Section Head of Quality Control.  UNUM did so, even though Plaintiff's treating physicians continued to document the restrictions and limitations arising from his disabling medical conditions.  Indeed, in its denial letter date October 28, 2014, UNUM stated "We received medical records from Dr. Propp on March 14, 20014, indicating your restrictions and limitations have not changed since 2008.  These restrictions and limitations are noted as memory loss, standing more than two hours, walking more than two hours, completing calculations or memory based activities."

18.     Prior to the claim denial, on or about September 9, 2014, UNUM ordered Plaintiff to attend a neuropsychological evaluation.  The evaluator found "relatively weaker performance" in several areas and noted the Plaintiff's cognitive difficulties during testing.  He wrote, "It is possible that the relative cognitive difficulties noted above may require some continued use of compensatory mechanisms."  Nevertheless, the evaluator opined "it is unclear that these issues represent *significant* impairments at this time."  The Plan does not require "significant impairments" to support a disability claim.  Rather, the Plan defines disability as "unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."   Plaintiff's education, training and experience are in highly technical and scientific fields.  The "relative cognitive difficulties noted" by the evaluator continue to impair his ability to perform the duties of any occupation for which he is reasonably fitted.

19. In addition, the neuropsychological evaluator tested the Plaintiff on basic motor tasks involving the upper extremities. The evaluator reported abnormalities and noted, "It is possible that his performance on basic motor tasks remains impaired by his diagnostic history which includes neuropathy." Thus, the neuropsychological evaluation provided evidence of both physical and cognitive disability, which supports Plaintiff's claim.

20. Plaintiff timely appealed the denial of his claim. In support of his appeal, he submitted updated medical records from gastroenterologist Dr. William D. Carey and neurologist Dr. Vadak Ranganathan, as well as EMG, MRI and x-ray studies, all of which support his continued disability, as defined in the Plan. Plaintiff's Board Certified Neurologist, Dr. Ranganathan, certified his total disability based on peripheral neuropathy, bilateral cubital tunnel syndrome, and cognitive dysfunction.

21. On or about September 16, 2015, UNUM had its vocational consultant re-review the Plaintiff's claim. The consultant opined that Plaintiff's own occupation is "Quality Control Coordinator" based on the obsolete Dictionary of Occupational Titles ("DOT") code 168.167-066, listed as a sedentary occupation. Nevertheless, she determined that Plaintiff's occupation was more physically demanding than reflected in the DOT code. She noted, "The physical demands of this occupation, however, should be reported as requiring Light capacity… the physical demands would include the following: Light Work - Exerting up to 20 pounds of force occasionally…to move objects. Frequently Sitting, Occasionally Walking, and Occasionally Standing. Frequently Handling, Frequently Fingering, and Occasionally Keyboard Use." She also referenced the earlier vocational reviews which outlined the complexity and cognitively-demanding nature of the occupation.

22. Ultimately, UNUM's vocational consultant concluded: "The insured would be fitted

to a variety of occupations within the Sedentary to Light range of functioning. These occupations, however, would not provide an income that would meet or exceed $64,792 per year or $31.15 per hour within his labor market. Though the insured has an advanced degree, it does not allow entry into the labor market at an income that would be considered gainful." The variety of sedentary to light occupations considered by the vocational consultant include Plaintiff's own occupation, which is highly technical and requires current training and recent experience. After more than a dozen years out of the workplace due to disability, Plaintiff would not be capable of earning a gainful wage as that term is defined under the Plan. Therefore, according to UNUM's own vocational consultant, Plaintiff is disabled under the terms of the Plan.

23. UNUM also had the medical records in its file reviewed by its on-site physician, Beth Schnars, MD, who is board certified in internal medicine. No physician with expertise in neurology, neuropsychology, or orthopedics reviewed the records in the claim file supporting Plaintiff's disability.

24. Dr. Schnars noted in her report the medical evidence of disability submitted by the Plaintiff, including: November 2014, Liver Biopsy, "borderline rejection"; February 2015, EMG/NCS BUE, moderate bilateral cubital tunnel syndrome, C5-6 Radiculopathy; March 2015, EMG/NCS BLE, mild left L4-5 radiculopathy; February 2015, MRI C-spine, moderate left C5-6 foraminal stenosis, X-ray L-spine Grade I retrolisthesis of L5 on S1; February 2015, MRI L-spine, spinal foraminal stenosis; and April 2015, MRI Brain, mild brain atrophy, 9.5mm subependymoma inferior aspect of 4th ventricle. In addition, Dr. Schnars reviewed the neuropsychological evaluation report.

25. Despite having reviewed all of the above, Dr. Schnars opined "there is no condition

or combination of conditions that would [have] reasonably precluded the claimant from performing the activities identified by the VRC below." Dr. Schnars' opinion remained unchanged whether the occupational demands identified were in the "light" or "sedentary" physical demand category. Significantly, Dr. Schnars' reports only list the physical demands of sedentary and light occupations; Dr. Schnars did not consider the non-exertional, cognitive demands of Plaintiff's own occupation.

26. On or about November 2, 2015, UNUM upheld its denial of benefits under the Plan. In this denial letter, UNUM failed to identify its on-site physician, Dr. Schnars, nor any of its vocational consultants pursuant to 29 CFR § 2560.503-1(h)(3)(iv), which requires UNUM to "[p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination." Yet UNUM quoted extensively from the opinions of its consultants, upon which it based the denial of benefits.

27. Based upon the substantial medical evidence in the possession of UNUM at the time of the denials, UNUM's decision to deny disability insurance benefits was wrongful and contrary to the terms of the Plan. ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator discharge its duties in respect to discretionary claims processing solely in the interests of the participants and beneficiaries of the plan, and it underscores the particular importance of accurate claims processing by insisting that administrators provide a "full and fair review" of claim denials.

28. Here, UNUM engaged in ERISA procedural violations; violations of its obligations under the Regulatory Settlement Agreement ("RSA") as referenced in *In the Matter of Unum*

*Life Insurance Company of America, Targeted Multistate Disability Income Market Conduct Examination*; and violations of its own policies and procedures as set forth in its claims manual, which are the hallmark of failure to provide a "full and fair review." These include but are not limited to: prior to the initial denial, failing to request relevant medical, surgical and pharmacy records referenced in the claim, despite having a signed authorization to do so; failing to provide medical consultants in the correct specialties to review the medical records in the claim file; and failing to identify the medical and vocational consultants who reviewed Plaintiff's records. UNUM ignored the proof of Plaintiff's disability, confirmed by his treating and consulting physicians, but combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim. UNUM based its denial on the opinions of medical consultants employed by UNUM and, therefore, operating under a conflict of interest. UNUM based its ultimate denial on a non-examining "on-site physician" whose opinion was given greater weight than the board certified treating physicians in the correct medical specialties who had physically examined the claimant and who support his continued disability. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, UNUM denied Plaintiff's claim of cognitive impairment – despite the neuropsychologist's report of cognitive deficits requiring compensatory mechanisms – based on an alleged lack of "significant impairments at this time," which is not the definition of disability in the Plan.

29. As a direct and proximate result of UNUM's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about October 29, 2014, to the present date.

30. A controversy now exists between the parties as to whether Plaintiff is disabled as

defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits, including continuation of his life insurance coverage provided under the Plan, and reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present plus interest. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### (Attorney's Fees and Costs)

31. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

32. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees and costs to pursue this action, and is entitled to have such fees and costs paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

33. Defendant has the ability to satisfy the award.

34. Plaintiff's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all participants.

35. Defendant has acted in bad faith in terminating Plaintiff's benefits under the Plan.

36. The award of attorney's fees against Defendant will deter others acting under similar circumstances.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about October 29, 2014, together with interest at the legal rate on each monthly payment from the date

it became due until the date it is paid; continuation of life insurance coverage provided under the Plan; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits including reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

  2. An order determining Plaintiff is entitled to future disability benefits so long as he remains disabled as defined in the Plan;

  3. For reasonable attorney fees incurred in this action; and,

  4. For such other and further relief as the Court deems just and proper.

DATED: March 14, 2016

THE PLAINTIFF, GARY HAGGY, BY SEAN K. COLLINS, ATTORNEY AT LAW, AND DARRAS LAW, HIS ATTORNEYS:

  /s/ Sean K. Collins
  SEAN K. COLLINS

SEAN K. COLLINS (ct29296)
Sean K. Collins, Attorney at Law
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 320-8485
Fax: (617) 227-2843
sean@neinsurancelaw.com

FRANK N. DARRAS (phv pending)
SUSAN B. GRABARSKY (phv pending)
Darras Law
3257 East Guasti Road, Suite 300
Ontario, CA 91761
Telephone: (909) 390-3770
Fax: (909) 974-2121
frank@darraslaw.com
sgrabarsky@darraslaw.com